NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-291

IN THE INTEREST OF J. A. K. AND T. L. K.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC 2005-0492
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED.

William Thomas Babin
Assistant District Attorney, 15th JDC
405 West Convent St.
Lafayette, LA 70501
(337) 232-7747
Counsel for Appellee:
 State of Louisiana, Department of Social Services

Larry Edward Pichon
Attorney at Law
1109 Pithon St.
Lake Charles, LA 70601
(337) 439-3073
Counsel for Appellant:
 D. D. K.

**Donald Cleveland**
**Attorney at Law**
**P. O. Box 3611**
**Lafayette, LA 70502**
**(337) 235-5791**
**Counsel for Appellant:**
**C. K. K.**

**PICKETT, Judge.**

The defendant-appellant, CKK, appeals the trial court's judgment terminating her parental rights. The father, DDK, also filed a brief in this court suggesting that the court erred in terminating his parental rights. His appeal, however, was dismissed as abandoned by the trial court for failure to pay costs pursuant to La.Code Civ.P. art. 2126(E)(2). The judgment of the trial court terminating his parental rights is therefore a final judgment which this court does not have jurisdiction to consider.

## STATEMENT OF THE CASE

CKK is the mother of two children, TLK, now seven years old, and JAK, now five years old. The father of these children is DDK. In 2004, they transferred custody to CKK's father and step-mother, JK and BK. CKK still had regular contact with the children.

In May 2005, during a visit with CKK, TLK told her mother that her uncle, the sixteen-year-old son of JK and BK, had abused her. CKK contacted the Office of Children's Services (OCS) to report the abuse. On May 25, 2005, the trial court issued an Instanter Order removing the children from the custody of JK and BK and placing them in the custody of the state. The children were not placed in the custody of their mother because she allegedly admitted to long-term substance abuse and had placed them in the care of her father JK, against whom she had allegedly made a complaint of sexual abuse in 1993 which was verified by OCS. TLK and JAK were adjudicated children in need of care by the trial court on August 16, 2005.

At the August 16, 2005 hearing, the trial court approved a case plan dated June 22, 2005. The case plan required CKK to undergo a substance abuse evaluation, follow any recommendations of the evaluator, refrain from using drugs or alcohol,

1

and submit to random drug tests. She had to maintain suitable housing for six months. She had to complete parenting classes. She had to submit to a psychological evaluation and follow any recommendations of the psychologist. She had to maintain employment for six months and pay support of $100 per month. She had to refrain from criminal activity. She had to keep OCS informed of any changes in her situation and meet regularly with her case manager. She had to develop a visitation schedule with the children and stay in contact with the girls. Finally, she had to assist OCS in finding a permanent home for the children. The stated goal of the case plan was reunification of the children with their mother.

On November 11, 1005, the court continued the children in state custody and re-approved the case plan of June 22, 2005. On April 4, 2006, the trial court approved the November 2005 case plan, which does not appear in the record. The judgment approving the case plan and continuing the children in state custody does state that the permanent plan for the children was changed from reunification to adoption.

The next case plan in the record is dated May 8, 2006. In it, both reunification and adoption are checked as goals. The requirements of this case plan are substantially the same as the first case plan. The only difference is that the new case plan acknowledges that CKK completed a psychological evaluation. CKK is required to follow the recommendations in that evaluation, including substance abuse treatment. The trial court approved the May 2006 case plan on October 3, 2006, and continued the children in state custody with the goal of adoption.

2

The next case plan in the record is dated November 1, 2006. This case plan continues the same requirements for CKK. The goal is adoption. This case plan was approved by the trial court on April 17, 2007.

Two weeks before the final case plan was approved by the trial court, on April 3, 2007, the state filed a petition for termination of CKK's parental rights based on La.Ch.C. art. 1015(5). Trial on the termination petition was held on July 24, 2007. After the trial, the court ruled that the state had met its burden of proof and that termination of parental rights was in the best interest of the children. He signed the judgment terminating the parental rights of CKK and DDK on July 26, 2007. CKK timely perfected this appeal.

DDK filed an appeal on August 9, 2007. The trial court filed a Rule to Dismiss the Appeal of DDK on January 11, 2008, for failure to pay costs. The trial court allowed DDK an additional 10 days to pay costs of the appeal on February 12, 2008. When DDK did not pay costs, the trial court dismissed his appeal pursuant to La.Code Civ.P. art. 2126(E)(2) on March 4, 2008. DDK filed a brief in this case asking that we reverse the judgment terminating his parental rights. As the judgment as to DDK has not been properly appealed, this court lacks jurisdiction with respect to the termination of DDK's parental rights.

## ASSIGNMENT OF ERROR

The appellant, CKK, asserts one assignment of error:

The trial court erred in terminating the parental rights of the Appellant, CKK.

3

# DISCUSSION

The supreme court discussed the law applicable to an action by the state to terminate parental rights in *State ex rel. A.T.*, 06-501, p. 5 (La. 7/6/06), 936 So.2d 79, 82:

> Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. Permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens. However, the primary concern of the courts and the State remains to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the State. *State ex rel. S.M.W.*, 00-3277 (La.2/21/01), 781 So.2d 1223.
>
> . . . .
>
> In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds by clear and convincing evidence. *State ex rel. J.A.*, 99-2905 (La.1/12/00), 752 So.2d 806, 811 (citing La. Ch. C. Art. 1035(A); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Further, even upon finding that the State has met its evidentiary burden, a court still must not terminate parental rights unless it determines that to do so is in the child's best interests. La. Ch. C. Art. 1039; *State ex rel. G.J.L.*, 00-3278 (La.6/29/01), 791 So.2d 80, 85.

On review, this court will not overturn the findings of fact of the trial court in a termination proceeding unless the trial court committed manifest error or is clearly wrong. *In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47.

In this case, the state's petition for termination was based on La.Ch.Code art. 1015(5), which states:

> The grounds for termination of parental rights are:
>
> . . . .
>
> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of

4

the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

The case plans CKK was required to follow included recommendations concerning housing, drug treatment, parenting classes, psychological evaluation, support payments, and visitation. We will discuss each issue individually to determine if the state met its burden of proving by clear and convincing evidence that CKK failed to substantially comply with her case plans.

*Housing*

The case plan required CKK to maintain a safe and stable home for six months. Jaqueta Taylor, CKK's case worker for most of the time the children were in state custody, testified that CKK had moved six times between August 2005 and the date of trial in July 2007. CKK claimed that she had moved around, but had not lived in six different places. At the time of trial, CKK had lived in a trailer for eight months. Ms. Taylor testified that the home was not suitable for the children because a porch attached to the trailer was unstable. CKK stated that the porch had been removed and replaced with stairs.

*Drug Treatment*

The case plan required CKK to attend a substance abuse evaluation, follow the recommendations of that evaluation, refrain from using drugs, and submit to random drug tests. CKK attended two separate evaluations, but neither recommended treatment because CKK refused to acknowledge she had a drug problem. At trial, she stated that the last time she had used drugs was in 2004. CKK failed to show up for drug screens the five times that OCS scheduled testing. She gave various excuses for missing the drug tests, such as work or failing to bring identification to the testing

5

facility. The record is clear that CKK did not comply with her case plan on the issue of getting treatment for her drug use, and the implication in her failure to submit to random tests is that she was still using drugs.

*Parenting Classes*

The case plan required CKK to attend parenting classes. She started classes, but stopped going because she had to work. She asked to reschedule the classes, but never did. CKK clearly did not comply with this element of her case plan.

*Psychological Evaluation*

The case plan required CKK to undergo psychological evaluation and follow any recommendations that the evaluator made. CKK was evaluated by a psychologist, who recommended treatment for substance abuse. As mentioned previously, CKK has not sought treatment for substance abuse.

*Support Obligation*

The case plan required CKK to pay $100 per month to the state for the support of the children. Ms. Taylor testified that she made one payment in two years, despite being employed for most of the time the children were in state custody. CKK testified that she had paid $260, but did not realize that support payments were required by the case plan. It is clear that CKK did not comply with the case plan in this area.

*Visitation*

The case plan required CKK to visit the children regularly according to a schedule. Ms. Taylor testified that in two years CKK had missed a couple of visits, generally for health reasons, and had been late for a couple more. The record is clear that CKK did comply with this part of her case plan.

6

In reviewing the evidence presented to the trial court, we cannot say the trial court was manifestly erroneous in finding that CKK failed to substantially comply with her case plan. While CKK did visit her children regularly, every other element of the case plan was either barely maintained (housing) or completely ignored (drug treatment, parenting classes, and support payments). Since the evidence supports the findings of the trial court, we cannot reverse it.

We must still determine if the trial court erred in finding it was in the best interests of TLK and JAK to terminate CKK's parental rights. Ms. Taylor testified that the children need permanency and a stable environment. She told the court that the foster parents and the children have bonded, and the foster parents want to adopt the children. As the record supports the trial court's conclusion, we find no manifest error.

*Conclusion*

As we find no error in the trial court's judgment, it is affirmed in all respects.


**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3, Uniform Rules, Courts of Appeal.